# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TANEISHA BEDENFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT

**COMES NOW** Plaintiff Ms. Taneisha Bedenfield ("Plaintiff" or "Ms. Bedenfield"), by and through her counsel, and for her complaint against Defendant United Parcel Service, Inc. ("Defendant," "UPS," or "the Company") states and alleges as follows:

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.  Plaintiff brings this action against Defendant UPS for discriminatory, retaliatory, and other unlawful conduct in employment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and Kansas common law, as result of Defendant's: a) unlawfully and repeatedly subjecting Ms. Bedenfield to sexual harassment and a hostile environment; b) retaliating against her for her reports or complaints of this repeated and flagrantly unlawful conduct; c) failing to address this repeated unlawful conduct; d) negligent retention and supervision of the individuals – employees of UPS – carrying out this repeated and unlawful conduct and who had a well-known history of and propensity for such; e) blatantly ignoring and breaching the discrimination, harassment, and non-retaliation and other agreements and promises it is bound by and set forth in its written polices and codes; f) knowingly, willingly, wantonly, and maliciously subjecting Plaintiff to extreme fear, anxiety, and distress due to such; and, g) engaging in other related unlawful acts, conduct, and practices.

2.   The acts, conduct, and practices which form the basis for this action have resulted in UPS discriminating against Ms. Bedenfield on the basis of her sex with respect to the terms, conditions, and privileges of her employment; and, the manner in which UPS has failed to redress this and comply with its related legal obligations and follow its own related written rules and procedures has resulted in prohibited sex discrimination, harassment, hostile environment, retaliation, and negligent retention and supervision. The related acts, conduct, and practices of UPS are a violation of Title VII and Kansas law.

3.   This unlawful conduct of UPS created and furthered a hostile environment which interfered with Ms. Bedenfield's ability to perform her job and resulted in her being exposed to a threatening and dangerous workplace and sustaining physical assault and emotional distress, fear, anxiety, and trauma.

4.   UPS had a duty to take prompt, remedial corrective action to address the repeated acts of harassment and assault that Plaintiff was subjected to and UPS failed to do so.

5.   UPS's unlawful conduct demonstrates an ongoing pattern of a failure to respond to incidents of harassment and a hostile environment, with regard to Plaintiff and others, and shows malice and a reckless indifference and disregard for the rights and safety of Ms. Bedenfield and other UPS employees.

6.   UPS has a corporate practice and policy, both at the facility where Plaintiff worked and throughout its facilities across the nation, of condoning and creating an environment which fosters and allows sex and other forms of discrimination, harassment, and a hostile environment.

7.   UPS knowingly, negligently, and recklessly employs and retains employees who have a known history of discriminatory, retaliatory, dangerous, and threatening behavior and conduct and have exhibited such in the workplace.

8.  UPS's failure and refusal to address Plaintiff's related complaints were also taken out of retaliation for her complaining or reporting the unlawful conduct she was subjected to. UPS's conduct was specifically designed to dissuade and deter Ms. Bedenfield and others from making reports or complaints about the unlawful conduct they were subjected to.

9.  UPS's asserted reasons for its conduct are blatantly untrue and a pretext for its unlawful conduct and perpetuated and condoned the discrimination, harassment, hostile environment, and retaliation which occurred with Plaintiff and others.

10. UPS corporate policy or practice requires the Company and its managers and supervisors to unlawfully discriminate and retaliate against any of its employees who report or complain of unlawful, unsafe, unethical, and/or otherwise improper acts, conduct, or practices engaged in by UPS and otherwise unlawfully harass, intimidate, threaten, and interfere with its employees seeking to exercise their rights under related laws.  This corporate policy or practice of UPS is actively and subtly carried out by various UPS managers and supervisors at the Company's local Kansas City, Kansas (James Street) and Lenexa, Kansas facilities, as well as those throughout the nation.

11. In violation of Title VII, UPS has repeatedly and continuously retaliated against Ms. Bedenfield for engaging in related protected activity, including, but not limited to, her complaining or reporting of the unlawful conduct she was subjected; and, this amounts to further harassment and perpetuating the hostile environment she was subjected to and had to endure.

12. Given the unlawful conduct and emotional strain she was subjected to at UPS, as well as UPS's refusal to address such, Ms. Bedenfield resigned from her position at the Company. No reasonable person in her situation would be expected to continue in such an environment.

## PARTIES

13. Plaintiff is a thirty-six (36) year old African-American female and a resident of Greenwood, Missouri. Ms. Bedenfield was a devoted, loyal, and productive employee of UPS for her relative brief time there at its Kansas City, Kansas ("James Street") facility with no disciplinary issues and only positive reviews.  Ms. Bedenfield's position while employed at UPS was that of preload sort. Ms. Bedenfield was more than qualified for and satisfactorily met the legitimate job expectations for this position. However, Ms. Bedenfield was repeatedly subjected to harassment, a hostile environment, physical assault, and retaliation during her time at UPS. This is part of the widespread discriminatory, retaliatory, and dangerous and hostile work conditions at this UPS facility, as well as those throughout the nation. It is an ongoing pattern and practice of unlawful conduct UPS is fully aware of, condones, and has carried out for years.

14. Defendant UPS is a Delaware corporation, having corporate headquarters located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328. UPS is the world's largest private mail carrier with hundreds of thousands of employees worldwide and is one of the largest private employers in the United States. Defendant has generated annual revenues in excess of $50 billion for years. It also has one of the largest political action committees in the nation. And, in addition, UPS does significant amounts of business with the United States Government and agencies thereof; thus, the taxpayers subsidize its unlawful conduct and practices.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the Federal law claims herein, pursuant to 28 U.S.C. §§ 1331 and 1343.

16. This Court has jurisdiction over the Kansas law claims herein, pursuant to 28 U.S.C. § 1367.

4

17. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (c). The unlawful employment acts, conduct, policies, and practices set forth herein occurred and continue to occur in this District, where Defendant has multiple facilities, employees thousands of individuals, and transacts substantial and ongoing business, where Ms. Bedenfield worked, where the unlawful conduct and damages at issue originated and occurred, and where the unlawful employment acts, conduct, policies, and practices remain in effect in continuous, systemic violation of the respective statutes and law.

18. At all times relevant to this action Defendant has been an entity and an employer subject to the laws, rules, and regulations at issue herein.

19. Plaintiff filed a charge of discrimination against UPS with the Equal Employment Opportunity Commission ("EEOC") on September 21, 2018. The claims of sex discrimination, harassment, hostile environment, and retaliation and the other unlawful acts, conduct, and practices set forth within that charge and arising out of and related to that therein are included with this Complaint.

20. Plaintiff received a Notice of Right to Sue from the EEOC with respect to said charge dated July 29, 2019; this action is brought within 90 days of the issuance of said Notice of Right to Sue.

21. Plaintiff has exhausted all of her administrative remedies with the EEOC.

22. Ms. Bedenfield has fully complied with any and all prerequisites to jurisdiction in this Court under Title VII and related law.

**FACTUAL STATEMENT AND ALLEGATIONS**

23. Ms. Bedenfield is a thirty-six (36) year old African-American woman.

24. She started working at UPS at its Kansas City, Kansas (James Street) facility in or around October of 2017.

25. Her job title or position at UPS was preload sort; and, that is the position she held until she was forced to resign.

26. In January 2018, Ms. Bedenfield was given instructions to work in a new area with another worker – Barry.

27. While they were working, Barry continued to tell Plaintiff he had worked at UPS for a long time.

28. And, while they were working, Barry repeatedly put his hands on Ms. Bedenfield's hips.

29. The area they were working in was not a closely confined space.

30. Upset, Ms. Bedenfield asked Barry if he wanted to switch spots with her because there was no need for him to keep touching her.

31. She asked Barry not to do this; yet, shortly after, he put his hands on her ass; and, Ms. Bedenfield immediately froze and moved away.

32. Barry could see Ms. Bedenfield was very upset and said, "Sorry."

33. Yet, at that time, having just started working at UPS several months earlier and with Barry telling Plaintiff how long he had been there, Ms. Bedenfield decided not to report this at that time.

34. However, about a week later, Ms. Bedenfield's supervisor, Tom, asked her to again work in that same area with Barry. While not wanting to be insubordinate, she told Tom she did not want to.

35. Tom asked her "why" and she said, "Because last time he (Barry) touched me on my ass." Tom asked if Plaintiff if she had told anyone and she said no.

36. Several days later Ms. Bedenfield was asked to help in that area again by Alex, a manager, and she told him the same thing she had told Tom.

37. Alex claimed he was not aware of what had occurred, although Ms. Bedenfield told him she had already told Tom.

38. Later, Ms. Bedenfield saw Alex talking to Tom; and, after speaking to Tom, Alex asked Ms. Bedenfield for a written statement to be given to Human Resources.

39. Later, Plaintiff took part in a meeting with James Willis (union representative), Eric White (HR), and Tammy Tombs from HR in regards to the statement she had written and was told an investigation would take place.

40. Ms. Bedenfield received a few phone calls from Human Resources after this meeting "checking up" on her and asking how she was doing.

41. Ms. Bedenfield was also asked by Eric (HR) at a later date if anything new had occurred concerning the incident with Barry; and, she informed him (verbally) that Barry had "popped up a couple times" in her area (Dock 17).

42. The first time Barry came to her area he said was helping with irregular (E-Regs) sized and/or shaped packages, yet he was empty handed.

43. This was witnessed by Tom; he stepped in front of Ms. Bedenfield as Barry was approaching.

44. The second time Barry came to Ms. Bedenfield's area asking what time it was; and, Jeremy (supervisor) told him the time.

45. Plaintiff did not receive any other follow-ups from HR about the meeting regarding Barry or the incident with Barry she reported.

46. Related, however, Ms. Bedenfield was approached by a colleague, Shauna, prior to her meeting with HR, who told Ms. Bedenfield she had heard about the incident with Barry.

47. Upon hearing this, Plaintiff was very upset about the lack of confidentiality of what she had reported.

48. Interestingly, though, from that discussion, according to Shauna, Ms. Bedenfield learned what she had reported was not the first time Barry had engaged in the kind of harassment Plaintiff had experienced.

49. And, then, yet again, on June 29, 2018, during an employee meeting, Ms. Bedenfield was again harassed and physically assaulted.

50. This time it involved a female co-worker, Porsha Parker, walking up behind Ms. Bedenfield and reaching her hand between Plaintiff's thighs, and rubbing her vagina in a wiping motion.

51. Shocked, Ms. Bedenfield turned around and pushed her away.

52. It wasn't until Plaintiff turned and pushed Ms. Parker that she knew who had touched her, as her back was to Ms. Parker.

53. After pushing Ms. Parker away, Ms. Parker immediately forced herself back into Plaintiff's personal space and reached behind her and grabbed her ass.

54. Plaintiff then grabbed both of Ms. Parker's wrists and extended her arms to create some distance between them while continually telling Ms. Parker to stop.

8

55. While trying to keep that distance between them, Ms. Parker continued her advances, bending her arms to get closer, lips puckered up trying to kiss Plaintiff, and between each kissing motion repeating the word "booty" over and over in a child-like voice.

56. This went on for what seemed to Plaintiff like forever.

57. Despite Ms. Bedenfield and a supervisor (Cheyenne) yelling, telling Ms. Parker to stop, she did not.

58. But, then, suddenly, Ms. Parker just stopped and walked away like nothing ever happened.

59. This was witnessed by a number of people, including several supervisors.

60.  One of these supervisors, Jeremy, walked up to Plaintiff and said, "what the fuck was that?!?!"

61. Yet, disturbing to Plaintiff, those present just watched and after this incident, went about their business, as if that kind of thing was normal or not out of the ordinary.

62. Several minutes later, after trying to calm down and gather herself, Plaintiff ran into Alex (manager) on the way to her work station and informed him on what had just taken place.

63. He told Plaintiff to go ahead and go to her station and shortly after approached Plaintiff and said, "Now what happened again?"

64. Plaintiff gave him another verbal statement and then submitted another written complaint report to Human Resources before leaving work that day.

65. And, this was given to Eric White, who responded by saying, "not again!"

66. In fact, on July 10, 2018, Eric White (HR) told Plaintiff he had just found out about her reports.

67. Plaintiff expressed to him that she felt unsafe and he told her that they could put something in place where any business Porsha Parker had with UPS was handled off premises.

68. Eric also told Plaintiff that they were requesting Porsha seek rehabilitation before she could return to work and they had yet to receive a response from her.

69. He said that there would be a time frame set where she (Porsha) would either have to seek help or she would be terminated.

70. As before, with the earlier harassment and assault, Plaintiff never received any follow-up from HR.

71. And, also very upsetting to Plaintiff was the fact that Porsha had just earlier been involved in an incident with her coming out of one of the UPS restrooms naked and running around among other workers.

72. Plaintiff was shocked UPS would allow someone involved in that kind of behavior back into the workplace not knowing what she might be cable of doing and/or what the risk to her or others might be.

73. Amazingly, since Plaintiff being assaulted by Porsha, UPS – once, again – allowed Porsha back to work; and, she continued to pass by the area Plaintiff worked in – gradually testing the limits of how close she could get to Plaintiff.

74. And, Plaintiff's supervisors were fully aware of this.

75. Given such, Plaintiff reported these concerns to HR on August 14, 2018 – personally speaking to Tammy (HR) there.

76. Yet, upon doing so, stunningly, Tammy claimed she knew nothing of what Ms. Bedenfield had reported earlier – that is, regarding the assault by Porsha.

77. Given the totality of all these events, Plaintiff felt very unsafe at work.

10

78. Even more so given UPS's failure to properly respond to her reports and the related incidents, including not following up with Plaintiff regarding how her concerns had and had not been addressed.

79. Because of and since these events have occurred, Plaintiff has suffered significant anxiety, distress, fear, frustration, embarrassment, and humiliation.

80. UPS's unlawful conduct during the time Ms. Bedenfield was employed there was continuous and ongoing and occurred each and every day – and up until the moment of the filing of her EEOC charge and thereafter to her resignation.

81. Ms. Bedenfield also believed (and, believes) UPS's conduct was taken in retaliation for her making related complaints against UPS; and, by creating and permitting such an environment, UPS was attempting to force her to resign.

82. The harassment and hostile environment – and the events surrounding such – which Ms. Bedenfield was subjected to were both severe and pervasive.

83. And, it most certainly interfered with her ability to effectively carry out her job duties (yet, she continued to perform more than effectively). For example, things like going to the restroom and clocking out (in my assigned work area) were stressful for her, as these are places that are shared by all women and which Porsha frequented.

84. The repeated unlawful conduct Ms. Bedenfield has experienced – including sexual assault (battery) – is indisputable and was witnessed by and admitted to by those at UPS in supervisory and management positions, as well as human resources.

85. Further, what Ms. Bedenfield was subjected to is part of a history of sexual harassment of UPS employees at the James Street facility.

86. When looked at along with UPS's history and practices at this particular location - including repeated and ongoing discrimination and retaliation, a recent incident involving a supervisor severely beaten by another employee, as well as environmental liability issues, due to employees being exposed to hazardous materials from a neighboring facility – a very clear picture is painted of an overtly dangerous workplace brought about due to UPS's callous and deliberate indifference.

87. UPS has a duty to prevent its employees from not being physically assaulted.

88. UPS has a duty to prevent its employees from not being sexually harassed.

89. UPS has a duty to prevent its employees from not having to work in a sexually hostile environment.

90. UPS has a duty not to retain employees who engage in sexual harassment.

91. UPS has a duty not to retain employees who physically assault other employees.

92. UPS has a duty not to retain employees who harass other employees.

93. UPS has a duty to not employ or retain individuals who pose a threat of physical harm or danger to its employees.

94. Prior to his sexually harassing Plaintiff, UPS was fully aware Barry had engaged in other acts of sexual harassment.

95. After he sexually harassed Plaintiff, Barry remained employed at UPS.

96. UPS hired and retained Porsha Parker knowing full well of her dangerous and threatening behavior to others, as well as herself.

97. UPS hired and retained Porsha knowing full well of her substance abuse, mental illness, and unlawful behavior.

98. UPS hired and retained Porsha knowing full well of these issues, that they were ongoing, and, due to such, she posed a threat and danger to other UPS employees.

99. UPS hired and retained Porsha after she engaged in repeated acts clearly showing she suffered from mental illness demonstrating she was a threat to herself and others.

100. UPS hired and retained Porsha while she was repeatedly found to have shown up to work under the influence of drugs and alcohol.

101. UPS just recently terminated Porsha's employment because of her showing up to work under the influence.

102. UPS was fully aware Porsha could very likely engage in the assault and harassment that she carried out with Plaintiff.

103. Yet, after Porsha assaulted, harassed, and continued to harass Plaintiff, although UPS was fully aware of such, UPS continued to employ Porsha.

104. UPS has an unlawful corporate-wide practice or policy of discriminating against its female African-American employees, as well as engaging in other forms of prohibited discrimination.

105. The UPS facility where Ms. Bedenfield worked has a long history of harassment and violence and UPS management, including HR, condoning such.

106. UPS has written policies and codes wherein the Company claims to prohibit the unlawful discrimination, harassment, assault, and retaliation Ms. Bedenfield has been subjected to.

107. The UPS Code of Business Conduct requires its employees to report certain types of conduct which they believe in good faith to be improper or unlawful.

108.  The UPS Code of Business Conduct expressly states that UPS will not retaliate against an employee making any such report and any such retaliation is prohibited and grounds for termination.

109.  UPS has failed to provide Ms. Bedenfield with any lawful or legitimate reason for the discriminatory and retaliatory conduct she has been subjected to by UPS.

110.  Those purported reasons, if any, UPS has ostensibly asserted for its unlawful treatment of Ms. Bedenfield are untrue, contradictory, not believable, and wholly pretextual.

111.  Likewise, UPS's failure to respond to Ms. Bedenfield's unlawful treatment is contrary to law and its own written policies and codes.

112.  UPS is fully aware the assault, harassment, discriminatory and retaliatory acts, conduct, and practices Ms. Bedenfield has been subjected to are unlawful.

113.  The unlawful manner and fashion in which Ms. Bedenfield was treated by UPS was deliberate, intentional, and outrageous, carried out willfully, wantonly, and maliciously, ongoing and continuing in nature, and is part of an unlawful UPS corporate-wide policy, pattern, and practice demonstrating malice and reckless indifference towards Ms. Bedenfield and others like her and/or similarly situated and warrants an award of punitive damages in a reasonable sum to be determined by a jury.

## COUNT I:

## SEX DISCRIMINATION & HARASSMENT & HOSTILE ENVIRONMENT
### (in Violation of Title VII)

114.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

115.  During her employment with Defendant, Plaintiff was subjected to unfavorable terms, conditions, and privileges of employment contributed to or in part because of Plaintiff's sex.

116.  Defendant continuously and repeatedly ignored and failed to respond to Plaintiff's requests to address and remedy this.

117.  This discriminatory treatment was ongoing, continuous, repeated, severe, and pervasive and thereby created a hostile environment.

118.  This discriminatory treatment and hostile environment interfered with Plaintiff's ability to effectively do her job and was intended to force Plaintiff to resign and she reasonably felt compelled to do so.

119.  The actions of Defendant were malicious, outrageous, calculated toward Plaintiff, or were taken in reckless disregard of Plaintiff's statutory rights, and as such, constitute violations of Title VII.

120.  Plaintiff has suffered substantial damages due to Defendant's unlawful employment practices, including Defendant's violation of Title VII.

121.  Plaintiff is entitled to punitive damages in such amount as the jury deems fair, reasonable, and sufficient to punish Defendant and deter Defendant and others from like conduct.

122.  Under Title VII, if Plaintiff prevails, she is entitled to recover all costs incurred herein, including reasonable attorneys' fees and all other costs and expenses of litigation.

123. Plaintiff also seeks prejudgment interest on all actual damages found by the jury to be due and owing through the date of trial.

124. As a direct and proximate result of Defendant's violation of the Title VII, Plaintiff has sustained significant damages in the form of economic and attendant emotional damages.

125. As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT II:

## RETALIATION
### (in Violation of Title VII)

126. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

127. Ms. Bedenfield, by virtue of her internal complaints and reports to UPS, has opposed any practice made an unlawful employment practice by Title VII and related law.

128. UPS had knowledge of and was fully aware that Ms. Bedenfield opposed her unlawful treatment and the discriminatory and retaliatory treatment she has been subjected to by UPS.

129. Ms. Bedenfield has been subjected to repeated and ongoing acts, conduct, and practices by UPS which were intended to and would easily dissuade an individual from engaging in this protected conduct.

130.  The retaliatory conduct Ms. Bedenfield has been subjected to resulted in a material adverse change in the terms and conditions of her employment; and, it was intended to and would easily dissuade one from complaining about the unlawful conduct.

131.  There is a causal connection between Ms. Bedenfield engaging in this protected conduct and the retaliatory and other unlawful acts, conduct, and practices of UPS she has been subjected to.

132.  As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT III:

## NEGLIGENT RETENTION
## (in Violation of Kansas Common Law)

133.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

134.  Defendant knew or should have known that the employees who harassed and assaulted Plaintiff were unfit or incompetent.

135.  Defendant, by virtue of knowledge of these employees' particular quality or propensity, had reason to believe that an undue risk of harm existed to others as a result of the continued employment of that employee.

136.  The harm which resulted from these employees acts was within the risk created by the known propensity for UPS to be liable.

17

137.  As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## COUNT IV:

## NEGLIGENT SUPERVISION
### (in Violation of Kansas Common Law)

138.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

139.  Defendant knew or should have known that the employees who harassed and assaulted Plaintiff were unfit or incompetent.

140.  Defendant, by virtue of knowledge of these employees' particular quality or propensity, had reason to believe that an undue risk of harm existed to others as a result of the continued employment of that employee.

141.  The harm which resulted from these employees acts was within the risk created by the known propensity for UPS to be liable.

142.  Defendant had reason to believe that the employment of these employees would result in an undue risk of harm to others.

143.  As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, Plaintiff has suffered pecuniary and non-pecuniary damages, out of pocket expenses, interest, mental and

emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.  Plaintiff through this cause of action seeks damages in excess of $75,000.00.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

i)  Defendant be ordered to make Plaintiff whole by providing appropriate economic damages, with prejudgment interest, in amounts to be proved at trial;

ii)  Plaintiff be awarded extraordinary and/or equitable relief as permitted by law, equity and any and all applicable statutory provisions related hereto;

iii)  Plaintiff be awarded all compensatory, restitutionary, and/or remedial relief;

iv)  Plaintiff be awarded pre-judgment interest and post-judgment interest, as well as her reasonable attorneys' fees, expert witness fees and other costs; and,

v)  Plaintiff be awarded such other legal and equitable relief as the Court deems appropriate and just.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Dated: October 25, 2019

Respectfully submitted,

___/s/ Fredrick D. Deay, II _____
Fredrick D. Deay, II    KS Bar No. 15035
LAW OFFICE OF FREDRICK D. DEAY, II
7575 W. 106th Street, No. 14
Overland Park, KS 66212
(913) 649-0687
fddpai2@hotmail.com  *email*

*- and -*

Kevin Baldwin    MO. Bar. No. 49101
Baldwin & Vernon
14 S. Main Street
Liberty, MO 64068
Tel: (816) 842-1102
Fax: (816) 842-1104
kevin@bvalaw.net  *email*

***Attorneys for Plaintiff Taneisha Bedenfield***